OPINION OF THE COURT
Paul G. Feinman, J.
The defendant’s motion to dismiss[1] the complaint is denied.
*195 CPLR 213-b was enacted in 1992 as part of a comprehensive legislative package to enhance the rights of crime victims after the original “Son of Sam” Law was ruled unconstitutional. [2] On this motion, the court is called upon to answer what appears to be a question of first impression: whether an insurance company which has paid its insured for defalcations by a dishonest employee qualifies as a “crime victim” or “representative of a crime victim” within the meaning of this CPLR provision. As is more fully discussed below, the court answers this question in the affirmative, and therefore plaintiff may rely on the seven-year Statute of Limitations of CPLR 213-b, rather than the three-year Statute of Limitations ordinarily applicable to claims sounding in conversion. However, because the court is unable to determine the date plaintiff’s cause of action accrued, the motion is held in abeyance pending further submissions from the parties consistent with this decision.
Procedural and Factual History
Plaintiff is an insurance company which issued a policy to Memorial Sloan Kettering Hospital covering losses arising out of employee infidelity. Defendant is a former employee of the insured hospital. It is undisputed that at some point prior to 1995 defendant stole approximately $100,000 from the plaintiff’s insured, the hospital.
Annexed as an exhibit to plaintiff’s affidavit in opposition is a copy of the court action sheet from defendant’s guilty plea in Supreme Court, New York County, Criminal Term. That matter, captioned People v Erazo, was prosecuted by superior court information, rather than by indictment, thus requiring the defendant’s consent and written waiver. The court does not have before it a copy of the underlying superior court information, and the accompanying written waiver of indictment, nor of the underlying Criminal Court felony complaint filed prior to the matter’s transfer to the Supreme Court. These documents would, of course, be helpful in making a determination of how *196 much defendant admitted stealing, and when the theft occurred.
The action sheet reveals that defendant was arraigned and pleaded guilty in Supreme Court on October 13, 1995 on a superior court information charging him with grand larceny in the fourth degree, in violation of Penal Law § 155.30 (1). On November 21, 1995, defendant was sentenced to five years’ probation. As a condition of probation, defendant was ordered to pay restitution to the plaintiffs insured in the amount of $100,000. Defendant paid $50,000 of the restitution immediately upon sentencing. The repayment terms for the balance of the restitution are not set forth on the court action sheet. As the actual restitution order designating the New York City Department of Probation as the agency to collect restitution is not before this court, it is unclear whether the $100,000 figure was meant to include the statutory 5% surcharge that is imposed when restitution is ordered through the Department of Probation. (See, Penal Law § 60.27.)
Plaintiff alleges that after defendant made the initial $50,000 payment on the date of sentencing, defendant failed to make any other payments whatsoever. The Supreme Court action sheet farther indicates that on September 24, 1998 the defendant was “restored to probation.” Although this would imply that at some point the defendant was brought back before the sentencing Judge for an alleged violation of the terms and conditions of his probation, in the absence of a copy of the written specifications filed by the Department of Probation, or a transcript of any such proceedings, this court can only speculate as to whether the failure to comply with the restitution order was the basis for a declaration of delinquency having been filed. Also, in the absence of more information, the court cannot ascertain whether defendant is still on probation, because it is unclear whether his sentence was effectively tolled during the period his alleged delinquency was adjudicated. (See, Penal Law § 65.15 [2].)
In. the civil summons and complaint filed in the Supreme Court, Civil Term, in June 1999, and subsequently transferred to this court pursuant to CPLR 325 (d), plaintiff alleges that its insured, the hospital, made a claim for the loss arising out of defendant’s defalcation. The complaint alleges that, after calculating its insured’s actual damages at $102,638.53, and reducing that sum by the $25,000 deductible and the $50,000 already repaid by defendant, plaintiff paid out $26,638.53 to its *197 insured.[3] Plaintiff, rather than suing as subrogee, alleges in October 1997 it took “a full assignment of all the rights of action held by Memorial Sloan Kettering against defendant herein including any and all rights under defendant’s restitution agreement.” (Complaint 11.) The complaint, filed in June 1999, seeks $50,000, on the ground that defendant’s failure “to honor his plea agreement has resulted in his ‘unjust enrichment.’ ” (Complaint 14.)
Parties’ Contentions
Defendant seeks dismissal on the ground that the action is barred by the Statute of Limitations. In so doing,.he characterizes the plaintiff’s cause of action as sounding in conversion, and relies on the three-year Statute of Limitations set forth in CPLR 214.
Plaintiff argues that the relevant Statute of Limitations is the seven-year period for a “crime victim” or a “representative of a crime victim” set forth in CPLR 213-b. This statute specifically defines “representative” by reference to the simultaneously re-enacted Executive Law § 621 (6).[3]
[4] It does not, however, define “crime victim.” Plaintiff contends that it meets the definition of “representative” because it received an assignment of the hospital’s rights to restitution, and its action is therefore timely.[5]
Analysis
As an initial matter, the court must determine whether plaintiff is entitled to invoke the benefit of the longer Statute of Limitations set forth in CPLR 213-b. It has been observed that,
“ ‘[c]rime victim’ is not defined in the statute, but presumably the intent was to include the victim of any type of crime. The title of the section refers generally to the ‘victim of a criminal offense’ and the text provides that the civil action may be brought against a defendant convicted of ‘a crime’ *198 and ‘for any injury or loss resulting therefrom.’ Thus, § 213-b apparently embraces both felonies and misdemeanors and applies to case of financial harm (e.g., larceny, criminal fraud) as well as physical injuries and property damage. ‘Representative of a crime victim’ is specifically defined by cross-reference to § 621(6) of the Executive Law” (Alexander, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR 213-b, 2001 Pocket Part, at 208).
Thus, the statute should apply if the plaintiff, an insurance company, can be considered as “crime victim” or “representative of a crime victim.”
Plaintiff’s contention that it meets the definition of a “representative of a crime victim” is premised on its being an “assignee” of its insured’s right to restitution. However, plaintiff has not alleged with any specificity the existence of an “assignment” which would require an actual transfer of rights or interests by the assignor, here the insured. Typically, cases in which insurance companies pursue tortfeasors, after compensating an insured, are based on principles of subrogation. The Executive Law provision upon which plaintiff relies does not expressly list subrogees as among the parties who constitute a “representative.” In the absence of an allegation that there is documentary or other proof of an assignment by the insured hospital to the plaintiff, the court simply is unable to determine whether plaintiff qualifies as a “representative of a crime victim.”
Nonetheless, the court is able to determine that the plaintiff is entitled to invoke the longer Statute of Limitations because the court is satisfied that plaintiff is a “crime victim” within the meaning of CPLR 213-b. There is a dearth of reported cases interpreting CPLR 213-b, and none has addressed the specific question of whether the statute can apply to an insurance company as a “crime victim.” As the practice commentary to this provision points out, the few reported cases do broadly construe the provision to achieve its intended purpose of permitting crime victims to obtain compensation (Elkin v Cassarino, 248 AD2d 35 [2d Dept 1998]; see, Alexander, 1999 Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR 213-b, 2001 Pocket Part, at 207-208).
After the United States Supreme Court ruled New York’s “Son of Sam” Law to be an unconstitutional burden on free speech, the New York State Legislature revisited the issue of *199 compensating victims of crime and ensuring that criminals do not profit from their crimes. The result was a comprehensive piece of legislation entitled Compensation of Crime Victims by Criminals — Repeal of Son of Sam Law (L 1992, ch 618). This 1992 legislation amended not only the CPLR, but sections of the Criminal Procedure Law, the Executive Law, and the Penal Law with the intent to enlarge the opportunity for crime victims to be compensated by criminals. CPLR 213-b was enacted as part of this legislative scheme.
The Governor’s Bill Jacket contains a July 24, 1992 letter from one of the Assembly bill’s primary sponsors urging the Governor’s signature of law. Then-Assembly Member Alan G. Hevesi’s letter is illuminating to the extent it clarifies the Legislature’s intent in passing the bill. He wrote,
“Throughout the negotiations it was my intention and the intention of the others to assist crime victims by expanding their rights under the tort system as it currently exists * * *
“Any questions that may arise regarding the nature and extent of damages recoverable ought to be answered in the broadest fashion.” (Letter of Assembly Member Alan G. Hevesi, July 24, 1992, Bill Jacket, L 1992, ch 618.)
As explained by then-Attorney General Robert Abrams,
“[A] new section 213-b is added to the Civil Practice Law and Rules to permit the commencement of such action within seven years of the date of the crime. This represents a major extension of the current statutes of limitation available to crime victims, to wit, two years for an intentional tort resulting in death and one year for all other intentional torts. A victim will now have a meaningful time period in which to initiate a lawsuit against a defendant. More important, by expanding the period between the time the crime was committed and the latest time at which the victim may file his or her lawsuit, this bill increases the likelihood that the defendant would have acquired assets with which to pay any judgment won by the victim * * * “Although many defendants are indigent, and therefore unable to make restitution, it is difficult to understand why New York law until now has exempted those criminal defendants who are able to pay from being required to fully compensate *200 their victims for the damages they suffer due to such defendants’ criminal behavior.” (Mem of Attorney General Robert Abrams, July 16, 1992, at 1, 3, Bill Jacket, L 1992, ch 618.)
Given this legislative history indicating a strong intent that the new statute be broadly construed to compensate victims of crime, in considering whether an insurance company can come within the intendment of the statute, it is helpful to look at how the term “crime victim” has been interpreted for the purpose of carrying out the restitution provisions of Penal Law § 60.27. That statute, which also refers to “crime victims,” has been consistently held, both prior and subsequent to the 1992 reforms, to apply to insurance companies. (See generally, People v Kim, 91 NY2d 407 [1998] [insurer who pays insured is eligible for restitution]; People v Whitmore, 234 AD2d 1008 [4th Dept 1996] [insurance company which reimburses victim of crime can be considered victim under Penal Law § 60.27]; People v Bowden, 131 AD2d 581 [2d Dept 1987] [insurer entitled to seek restitution even where insured did not seek restitution]; People v Chery, 126 AD2d 659 [2d Dept 1987] [insurance carrier is “victim”].) It is entirely consistent with the ameliorative purposes of CPLR 213-b and the Penal Law’s understanding of the term “crime victim” to interpret that term when used in this new CPLR provision as including insurance companies.
Having as an initial matter determined that plaintiff is correct that CPLR 213-b is the applicable Statute of Limitations, the issue remains as to whether the period has elapsed. This requires that the court determine when the cause of action accrued. Contrary to what plaintiff argues, CPLR 213-b is quite clear that the time within which an action must be commenced is within seven years of “the date of the crime.” Here, there is no indication in the papers before the court as to the date (or dates) the crime(s) occurred. Indeed, the court is unable to even determine whether this was a single incident or, as is common in cases involving embezzlement by an employee, an ongoing crime which occurred over a course of time. The only dates plaintiff references are both in 1995, when the hospital reported the crime to plaintiff, and when defendant was convicted. The actual crime, of course, was committed prior to the date of its discovery.
Defendant, who is the movant, also provides no proof of when the crime occurred. Certainly the court cannot say with any degree of certainty that the crime occurred more than seven years prior to the institution of this action. Accordingly, final *201 resolution of this action must await further proof being submitted to the court as to the date the crime occurred. This might be either in the form of an affidavit of a person with actual knowledge of the dates of the crime, a transcript of the plea allocution in Supreme Court, or a certified copy of the Supreme Court superior court information to which defendant pleaded guilty. Final resolution of the motion is therefore held in abeyance pending a determination of the date(s) of the crime(s). It is, therefore, ordered that the motion to dismiss based on the Statute of Limitations is held in abeyance pending the submission of further papers and/or documents consistent with this decision; and it is further ordered that the motion is restored to the Special Term, Part I calendar for February 7, 2000 at 9:30 a.m. for the submission of said papers and/or documents.

. Defendant’s notice of motion and various papers refer to his motion to dismiss the complaint as being brought pursuant to CPLR 3211 (a) (8). However, that subdivision concerns whether the court has personal jurisdiction over the defendant. Here, the thrust of defendant’s motion is that the ac *195 tion is time barred. Inasmuch as plaintiff responded to this argument on the merits, there is no prejudice from the misidentification of the relevant subdivision. Accordingly, the court will deem the motion as one brought pursuant to CPLR 3211 (a) (5).

. The former version of Executive Law § 632-a, popularly known as the “Son of Sam” Law, was declared unconstitutional in Simon & Schuster v Members of N. Y. State Crime Victims Bd. (502 US 105 [1991]).

. There is no explanation for what appears to be a $1,000 discrepancy.

. Executive Law § 621 (6) provides: “ ‘Representative’ shall mean one who represents or stands in the place of another person, including but not limited to * * * an assignee.”

. Plaintiff alternatively argues that the action, if viewed as one to enforce a pre-existing money judgment, or as a breach of contract action, is also timely (CPLR 213). In light of the court’s disposition of the motion, the court need not reach these issues.